O
JS-6

# United States District Court
# Central District of California

BRYAN CRUZ,

            Plaintiff,

    v.

MERCEDES-BENZ USA, LLC, et al.,

            Defendants.

Case № 2:20-cv-05167-ODW (JCx)

**ORDER GRANTING MOTION TO REMAND [11]**

## I.    INTRODUCTION

On May 7, 2020, Plaintiff Bryan Cruz ("Cruz") filed this action in the Superior Court of California, County of Los Angeles.  (Notice of Removal ("Notice") ¶ 1, Ex. A ("Compl."), ECF No. 1.)  Defendant Mercedes-Benz USA, LLC ("MBUSA") removed the matter based on alleged diversity jurisdiction.  (Notice ¶ 5.)  Cruz moves to remand, arguing that (1) MBUSA fails to establish that the amount in controversy is more than $75,000 and (2) complete diversity is lacking because Cruz is not domiciled in California ("Motion").  (Mot. to Remand ("Mot.") 1, ECF No. 11.)  The Court finds that it lacks subject matter jurisdiction and **REMANDS** this action to state court.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.        BACKGROUND

This is a Song-Beverly Consumer Warranty Act ("Song-Beverly") action concerning a new 2019 Mercedes-Benz C300W ("Vehicle").  (Compl. ¶¶ 4, 6.)  Cruz alleges that MBUSA or its representatives failed to conform the Vehicle to the written warranties and other express and implied warranties after a reasonable number of attempts.  (Compl. ¶ 12.)  On May 7, 2020, Cruz filed this action in the Superior Court of California, County of Los Angeles, Case No. 20STCV17385.  (*See* Compl.)  Cruz asserts causes of action against MBUSA under Song-Beverly for Breach of Implied Warranty of Merchantability, Breach of Express Warranty, and Fraudulent Inducement.  (*See* Compl. ¶¶ 19–39.)  After MBUSA removed the case on the basis of diversity jurisdiction, Cruz then filed this Motion to Remand.  (Mot. 1.)

## III.        LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress.  U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Federal courts have original jurisdiction where an action arises under federal law or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *Id.* §§ 1331, 1332(a).

A notice of removal must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  But where "the plaintiff contests, or the court questions, the defendant's allegation" concerning the amount in controversy and "both sides submit proof," the court decides whether the defendant has proven the amount in controversy by a preponderance of the evidence.  *Id.* at 88–89.  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

# IV.     DISCUSSION

Cruz contends that MBUSA has failed to establish subject matter jurisdiction and the Court should remand this action to state court.  (*See* Mot. 1.)  As MBUSA asserts the Court has diversity jurisdiction, MBUSA must show that: (1) the amount in controversy exceeds $75,000; and (2) complete diversity of citizenship exists between the parties.  *See* 28 U.S.C. § 1332; *Dart Cherokee*, 574 U.S. at 89.

## A.     Amount in Controversy

"[T]he amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract."  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018).  When a complaint, as here, does not identify damages with specificity, a defendant seeking to remove the case to federal court must demonstrate that it is "more likely than not" that the amount in controversy will be satisfied.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

MBUSA asserts that the amount in controversy is satisfied by actual damages in lease payments totaling $18,104.65, a civil penalty of $36,209.30, and attorneys' fees of at least $47,500.00.  (Notice ¶ 15; Opp'n Mot. ("Opp'n") 4–7, ECF No. 12.)  Cruz contends MBUSA does not adequately establish these amounts.  (Mot. 2–3.)  First, as to actual damages, Cruz argues MBUSA fails to include the Vehicle's "use offset" or consider that Cruz has not paid the entire lease.  (Mot. 2–3.)  Second, Cruz asserts that, although "civil penalties are available," MBUSA has not offered any support for their inclusion in the amount in controversy.  (Mot. 3.)  Finally, Cruz argues that attorneys' fees are "costs and interest" and therefore excluded from the calculation. (Mot. 3.)  For the reasons below, the Court concludes that MBUSA has not met its burden to show the amount in controversy is satisfied.

### 1.     *Defendant Fails to Establish Actual Damages Under Song-Beverly*

Actual damages under Song-Beverly are the "actual price paid or payable by the buyer," minus the reduction in value "directly attributable to use by the buyer."

1  Cal. Civ. Code § 1793.2(d)(2)(B)–(C).  The reduction is based on the number of miles
2  the buyer has driven the vehicle prior to the first attempted repair.  *Id.*  MBUSA
3  estimates Cruz's actual damages to be the full lease amount of the car, but it fails to
4  consider that (1) Cruz has not paid the full lease amount, and (2) the Vehicle's value is
5  reduced based on Cruz's use, or what is known as the "use offset."

6         a.    Lease

7         Here, MBUSA asserts that Cruz's actual damages amount to $18,104.65, the
8  full amount of the lease.  To support this contention, MBUSA submits the Motor
9  Vehicle Lease Agreement ("Lease Agreement").  It lists a down payment of $4000
10 that includes the first monthly payment, registration vehicle fees and sales tax; total
11 monthly lease payments, including interest, of $13,509.65; and a turn-in fee of $595 if
12 Cruz did not purchase the Vehicle at the lease's end.  (Notice ¶ 15; Decl. of Samantha
13 M. Koopersmith ("Koopersmith Decl."), Ex. B ("Lease Agreement") 2–3, ECF
14 No. 12-2.)  Based on MBUSA's calculations, the total lease agreement comes to
15 $18,104.65, and thus MBUSA contends that Cruz's actual damages are based on this
16 figure.

17        Not so.  Foremost, the Lease Agreement does not necessarily reflect the amount
18 in controversy.  Damages may be based only on what the plaintiff has already paid
19 towards the lease, or what is "at stake" to make the plaintiff whole again.  *See, e.g.*,
20 *Brady v. MBUSA*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002) (limiting a plaintiff's
21 actual damages to lease payments actually made).  The court in *Brady* explained that
22 this conclusion "is consistent with the logic and purpose of the Song-Beverly Act to
23 make the consumer whole," and also "with the general principle of restitution
24 embodied in [California Civil Code §1793.2(d)(2)(B)] which seeks to restore the
25 plaintiff to his or her original position."  *Id.*  Here, Cruz requests restitution for all
26 money paid to MBUSA.  (*See* Compl., Prayer for Relief.)  Yet, MBUSA fails to
27 indicate how much Cruz has paid towards his lease.  (*See* Opp'n 5 ("Plaintiff will
28 make payments totaling $18,104.65 over the lease term"); Notice ¶ 15 ("The total

consideration under the Lease Agreement is $18,104.65 . . . .".).)  MBUSA provides no facts to support the amount of payments made by Cruz; thus the Court cannot discern what amount Cruz has paid towards the lease.  *See Lopez v. FCA US LLC*, No. 2:19-CV-07577-RGK (MRWx), 2019 WL 4450427, at *1 (C.D. Cal. Sept. 16, 2019) ("Without [the amount of payments made], the Court is left with considerable doubt as to the amount-in-controversy.")  Thus, MBUSA fails to carry its burden in establishing what portion of the lease may be considered in determining actual damages.

> b.   Use Offset

Next, MBUSA does not account for the statutory use offset.  Generally, actual damages are lessened by depreciation of mileage and use.  *See* Cal. Civ. Code § 1793.2(d)(2)(C) ("[T]he amount to be paid by the manufacturer to the buyer may be reduced . . . by that amount directly attributable to use by the buyer . . . .").  Courts calculate use offset by multiplying the price paid for the vehicle by a fraction of the number of miles the buyer drove the car before the first repair over 120,000.  *Mullin v. FCA US, LLC,* No. CV 20-2061-RSWL-PJW, 2020 WL 2509081, at *3 (C.D. Cal. May 14, 2020).

MBUSA does not even attempt to offset the Vehicle's mileage, instead merely asserting that Cruz seeks the totality of the payments in restitution.  (Notice ¶ 15.) This oversight is significant because it is possible that Cruz drove the car for many miles in the six months of leasing the car before he took it in for repair.  It is equally possible that Cruz's use of the Vehicle was minimal.  However, MBUSA's blanket assertion concerning the totality of payments, with no use offset, is unsupported. Therefore, MBUSA has not established the Vehicle's depreciation through use and time. *See Mullin*, 2020 WL 2509081, at *3 (finding that the defendants failed to meet their burden to show actual damages where they neglected to account for the mileage offset).

Given MBUSA's failure to account for Cruz's leasing the Vehicle and the use offset, MBUSA fails to carry its burden as to Cruz's actual damages. *See, e.g.*, *Edwards v. Ford Motor Co.*, No. CV-16-05852-BRO (PLAx), 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016) (concluding that "Defendant has failed to establish the likelihood that Plaintiff may recover *any* amount of actual damages by a preponderance of the evidence" where the defendant failed to produce information about how much the plaintiff paid for the car or what the use offset would be); *see also Eberle v. Jaguar Land Rover N. Am., LLC*, No. 2:18-cv-06650-VAP (PLA), 2018 WL 4674598, at *2 (C.D. Cal. Sept. 26, 2018) (remanding because the defendant "offered no maintenance record or any other facts to assist the Court in determining what the actual damages might be without resorting to speculation"). Accordingly, the Court does not include the actual damages in determining the amount in controversy.

### 2. Civil Penalty Damages

MBUSA next argues that a potential civil penalty of $36,209.30 is included in the amount in controversy. (Opp'n 5.) Conversely, Cruz contends that MBUSA "has not offered any evidence to support such an award [of a civil penalty]." (Mot. 3.)

If a court determines that a defendant's failure to comply with the terms of Song-Beverly is willful, a successful Song-Beverly plaintiff is entitled to recover a civil penalty of up to twice the amount of the actual damages. Cal. Civ. Code § 1794(c). However, if the amount of actual damages is speculative, an attempt to determine the civil penalty is equally uncertain. *See Edwards,* 2016 WL 6583585, at *4 (finding that the defendant's failure to establish the amount of actual damages precluded the Court from determining the amount of a civil penalty).

Here, because MBUSA has not established the amount of actual damages, determining a civil penalty is also uncertain. *See Eberle*, 2018 WL 4674598, at *2 (finding that where the amount of actual damages is speculative, the court is unable to determine whether a civil penalty might be imposed). Furthermore, although Cruz

alleges that he is entitled to a civil penalty under Song-Beverly (Compl., Prayer for Relief), MBUSA has not pointed to any specific allegations of willfulness in the Complaint that suggest a civil penalty will be awarded or how much it might be.  *See id.* (collecting cases holding that, where a defendant fails to offer evidence or allegations in support, courts are unable to determine the likelihood or amount of a civil penalty).  Accordingly, MBUSA fails to carry its burden regarding a civil penalty and the Court does not consider one in determining the amount in controversy.

    *3.    Attorneys' Fees*

MBUSA also contends attorneys' fees are included in the amount in controversy as statutorily allowed through Song-Beverly.  (Notice ¶ 19; Opp'n 6–7.)  Cruz argues that attorneys' fees are "costs and interest" and therefore excluded from the calculation.  (Mot. 3.)

The Ninth Circuit recently resolved a district court split and determined that a "defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy."  *Fritsch*, 899 F.3d at 794.  A removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and "make this showing with summary-judgment-type evidence."  *Id.* at 795.  "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof."  *Id.*  "[D]istrict courts may . . . rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees."  *Id.* (internal quotation marks omitted).

Here, MBUSA argues that Cruz's attorneys' fees would likely exceed $47,500 by applying a "relatively conservative estimate" of $475 per hour at over 100–120 hours.  (Opp'n 6–7.)  For support, MBUSA cites two previous cases involving Cruz's attorneys and asserts that the amount of attorneys' fees sought in those cases should be used as a baseline for the attorneys' fees calculation here.  (Opp'n 6.)  However, MBUSA fails to establish why this action is similar to the two cases cited.  This action

is less than five months old, whereas the cases cited by MBUSA were litigated for a minimum of two years.  MBUSA does not contend that this action will likely be litigated like the two cases cited, nor does it provide support for the notion that is case could span up to two years.  Because MBUSA only offers conclusions and speculative assumptions to substantiate its attorneys' fees calculation, MBUSA's statements fall short of the required summary judgment-type evidence.  Thus, without more, the Court does not consider attorneys' fees in determining the amount in controversy.[2]

Ultimately, the Court finds that MBUSA has not satisfied its burden of demonstrating by a preponderance of the evidence that the amount in controversy meets the jurisdictional requirement.  Therefore, the Court lacks subject matter jurisdiction and must remand.

**B.     Complete Diversity**

As MBUSA fails to meet its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court need not reach whether complete diversity exists between the parties.

///
///
///
///
///
///
///
///
///
///

---

[2] Notably, as the Court does not consider MBUSA's proposed actual damages or civil penalty, MBUSA's proposed attorneys' fees would need to satisfy the amount in controversy requirement standing alone.  However, even if MBUSA had successfully established that the attorneys' fees would likely exceed $47,500, that amount fails to meet the statutory threshold.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Cruz's Motion to Remand.  (ECF No. 11.)  The Court **REMANDS** the action to the Superior Court of the State of California, County of Los Angeles, 111 North Hill Street, Los Angeles, CA 90012, Case No. 20STCV17385.  The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

September 29, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**